971 A.2d 322

**Stephen H. ROGERS**

**v.**

**EASTPORT YACHTING CENTER, LLC, et al.**

**No. 123, Sept. Term, 2008.**

Court of Appeals of Maryland.

May 14, 2009.

C. Edward Hartman, II (Hartman and Egeli, LLP of Annapolis), on brief, for petitioner.

Charles R. Schaller (Linda M. Schuett of Linowes and Blocher LLP of Annapolis), Stephen P. Kling (City of Annapolis Office of Law of Annapolis, on brief), for respondents.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, BARBERA and JOHN C. ELDRIDGE, (Retired, Specially Assigned), JJ.

MURPHY, J.

Stephen H. Rogers, Petitioner, filed a Petition for Writ of Certiorari in which he presented this Court with two questions:

1. Whether the [Respondent Annapolis, Maryland] Port Wardens' decision [to grant the Application] for a Maritime Construction Permit filed by [Respondent] Eastport Yachting Center, LLC, [ (EYC) ] is void *ab initio* due to the failure to give legally sufficient notice of the hearing [held on the Application][?]
2. Whether the Circuit Court [for Anne Arundel County] and Court of Special Appeals erred in failing to strike the Port Wardens['] void decision[?]

We granted the Petition. 406 Md. 744, 962 A.2d 371 (2008). For the reasons that follow, we shall answer "no" to both questions, and therefore affirm the judgment of the Court of Special Appeals.

## I. Procedural History

The Circuit Court affirmed the decision of the Port Wardens in a MEMORANDUM OPINION filed on May 2, 2007. The FACTS AND PROCEDURE section of that opinion includes the following procedural history:

> EYC is located on Back Creek at 726 Second Street in Eastport. On June 6, 2006, EYC submitted an application to the City of Annapolis for the replacement of Pier 'B' and 133 feet of bulkhead. The application received recommendations of approval from the Department of Neighborhood & Environmental Programs on June 14, 2006; the Maryland Department of the Environment on June 15, 2006; the U.S.

Army Corps of Engineers on June 19, 2006; and the Department of Planning and Zoning on June 23, 2006.

The application was set for a public hearing before the Port Wardens on June 27, 2006. Notice of the hearing was published in The Capital on June 19, 2006, and June 20, 2006. EYC also sent notice via certified mail to the surrounding property owners, including Petitioner, on June 21, 2006.

At the hearing, Scott Mielke, the permit coordinator for EYC, presented EYC's application to the Port Wardens. Upon request of the Port Wardens, Mielke stipulated that the slips at the end of the proposed pier would not be used to dock any boat larger than forty-five feet to ensure that the harbor lines would not be breached. There was no testimony nor correspondence offered in opposition to EYC's application.

The Port Wardens found that the project does not have a material effect on the environment, navigation, or other riparian property owners. The Port Wardens also found that the project does not breach the lateral or harbor lines, does not conflict with WME [Waterfront Maritime Eastport] or Critical Area zoning regulations, is consistent with the 1998 Comprehensive Plan, and is necessary to improve the services of the marina. The Port Wardens unanimously approved the application in its written Findings on August 2, 2006.

In the words of the Petition for Writ of Certiorari:

[On] June 29, 2007, Mr. Rogers filed his notice of appeal to the Court of Special Appeals. On April 1, 2008, the Court of Special Appeals heard oral argument on this matter. At the hearing, the Court of Special Appeals questioned the parties on the merits of the appeal, and raised no question as to the jurisdictional basis for the appeal. On August 29, 2008, the Court of Special Appeals issued an unreported decision dismissing Mr. Rogers' appeal.... Therein, the Court of Special Appeals held that it did not have jurisdiction to hear an appeal from a decision

of the Port Wardens, citing, *inter alia,* Md.Code, Cts. & Jud. Proc. § 12-302(a) and Annapolis, Md., Municipal Code § 15.16.040(F)

**Judicial Review of the Port Wardens' Decision**

The PETITION FOR JUDICIAL REVIEW filed in the Circuit Court included the following assertions:

Stephen H. Rogers pursuant to Title 7 Chapters 200 and 300 of the Maryland Rules of Procedure requests judicial review of the actions of The Port Wardens of the City of Annapolis in the matter of:

Eastport Yachting Center

* * *

Petitioners were parties to the proceedings below before the Port Wardens, but were unable to attend the hearing because they were traveling out of state.

Petitioners also have standing to seek judicial review because they own property within 45 feet of the property which is the subject of this proceeding and they are directly affected by the outcome of this administrative proceeding.

Petitioner's MEMORANDUM IN SUPPORT OF PETITION FOR JUDICIAL REVIEW included the following arguments:

THE BOARD OF APPEALS' OPINION IS ARBITRARY AND CAPRICIOUS AND UNSUPPORTED BY SUBSTANTIAL EVIDENCE AND SHOULD BE REVERSED.

* * *

Recently in *Lewis v. DNR,* 377 Md. 382 [833 A.2d 563] (2003), the Court of Appeals in reviewing and reversing the denial of critical area variances stated:

"In *White v. North,* 356 Md. 31, 44 [736 A.2d 1072, 1079] (1999), we much more recently restated the general standard of review that:

'In judicial review of zoning matters, including special exceptions and variances, "the correct test to be applied is whether the issue before the administrative body is 'fairly debatable,' that is, whether its determinations is based upon evidence from which reasonable persons could come to different conclusions." ... For its conclusion to be fairly debatable, the administrative agency overseeing the variance decision must have "substantial evidence" on the record supporting its decision....'

"Nonetheless, we have also indicated in our cases ***that where an administrative agency's conclusions are not supported by competent and substantial evidence, or where the agency draws impermissible or unreasonable inferences and conclusions from undisputed evidence, such decision are due no deference***.... In *Belvoir Farms Homeowners Association, Inc. v. North*, 355 Md. 259, 267–68[, 734 A.2d 227, 232] (1999), we stated:

'Generally, ***a decision of an administrative agency, including a local zoning board is owed no deference when its conclusions are based upon an error of law.*** [*Catonsville Nursing Home, Inc. v. Loveman*, 349 Md. 560, 569, 709 A.2d 749, 753 (1998). ( ["[W]e may reverse an administrative decision premised on erroneous legal conclusions."[) ] [numerous citations omitted-emphasis supplied].

[*Id.* at 406–407, 833 A.2d at 578.]

The only factual statement the Board made in granting the application was that the Project did not conflict with lateral lines or zoning regulations. The Board completely ignored the Applicant's site plan which clearly showed the Project conflicted with the lateral line, and failed to require any evidence of zoning compliance.

The Board of Port Wardens has made Findings that clearly conflict with the evidence before it, which are therefore on their face arbitrary and capricious and unsupported by substantial evidence and should be accordingly reversed.

CONCLUSION

By failing to provide any factual basis to support its Findings that the Project did not conflict with the lateral lines or zoning regulations the Board of Appeals made its Findings arbitrary and capricious and unsupported by substantial evidence.

Appellant urges the Court to reverse the Board's approval of the application and remand the matter back to the Port Wardens for a new hearing and further proceedings to resolve the Project's conflicts with the lateral lines and zoning regulations. The Board should be directed to remove the conflicts with the lateral lines and zoning regulations before the application is processed further.

(Emphasis in original).

Thereafter, Petitioner filed an AMENDED MEMORANDUM that included the following statements:

STATEMENT OF QUESTIONS PRESENTED

1. Whether the decision of the Annapolis Port Wardens was arbitrary and capricious[?]
2. Whether the ruling of the Annapolis Port Wardens was supported by sufficient evidence to support the ruling[?]
3. Whether the Annapolis Port Wardens made sufficient and detailed findings of fact[?]
4. Whether the findings of the Port Wardens were clearly erroneous[?]

* * *

The decision of the Port Wardens was arbitrary and capricious, unsupported by substantial evidence, failed to set forth the reasoning on which it was based, and contained clearly erroneous findings. For each and all of these reasons, the decision of the agency must be reversed.

The Circuit Court's MEMORANDUM OPINION included the following findings and conclusions:

## *ISSUES*

1. Does Petitioner have standing to contest the decision of the Port Wardens after not being present at the administrative hearing?
2. Was the decision of the Port Wardens arbitrary and capricious, clearly erroneous, or not supported by substantial evidence?
3. Were the findings of the Port Wardens made in sufficient detail?

* * *

## *DISCUSSION*

This matter is before the Court for judicial review of a decision of the Port Wardens. The Port Wardens "regulate the placement, erection and construction of structures an other barriers within or on the waters of the City...." Annapolis City Code, § 15.16.020. The issues before this Court are whether: (i) Petitioner has standing to bring this matter before the Court; (ii) the decision was based on substantial evidence, was arbitrary or capricious, or was clearly erroneous; and (iii) the decision was made in sufficient detail. For the reasons stated below, the Court finds that Petitioner does not have standing to bring this matter before the Court. Even if Petitioner did have standing, the Court finds that the Port Wardens' decision was based on substantial evidence, was not arbitrary or capricious, was not clearly erroneous, and was made in sufficient detail.

### Does Petitioner have standing to contest the decision of the Port Wardens after not being present at the administrative hearing?

Petitioner contends that he has sufficient standing to appeal based on his status as an adjoining landowner pursuant to *Sugarloaf v. Dept. of Env't,* 344 Md. 271[686 A.2d 605] (1996). EYC counters by arguing that Petitioner has no standing because he is not an aggrieved party. Petitioner's property is located two parcels down from the subject

property. EYC also argues that Petitioner does not have standing because he did not participate in the administrative proceedings.

"A person aggrieved by a decision of the port wardens may appeal that decision to the Circuit Court of Anne Arundel County...." Annapolis City Code § 15.16.050(F).

* * *

Petitioner relies on *Sugarloaf* as a basis for having standing in this case. In *Sugarloaf,* the plaintiffs actually participated in the hearing before the Administrative Law Judge. *Sugarloaf,* 344 Md. at 280–81[, 686 A.2d at 610]. Therefore, being a party to the administrative proceeding was not at issue. *Sugarloaf* went on to uphold the rule that adjoining landowners are prima facie aggrieved for purposes of standing to bring judicial review. *Id.* at 296–97[686 A.2d at 618].

This case differs from *Sugarloaf* because Petitioner did not do anything to preserve his standing as a party to the proceeding. EYC sent Petitioner notice of the administrative hearing by certified mail. Petitioner chose neither to attend the hearing nor to submit any written opposition to the Port Wardens. Therefore, Petitioner did not preserve his standing to appeal the decision of the Port Wardens because Petitioner did not become a party to the administrative proceeding.

As stated above, Petitioner noted an appeal to the Court of Special Appeals. In an unreported opinion, that Court ordered that Petitioner's appeal be "dismissed for lack of jurisdiction," on the grounds that (1) "there is no express statutory provision in state, county, or local law conferring jurisdiction upon the Court of Special Appeals to hear appeals arising from decision of the Annapolis Board of Port Wardens," and (2) "when [Petitioner] brought his action for judicial review before the circuit court, he only challenged the discretion of the Port Wardens and the substance of their findings [but] did not allege the kind of failure to perform a nondiscretionary duty that would give rise to a mandamus action." *Rogers v.*

*Eastport Yachting Center, LLC,* No. 07–990, slip op. at 6 (Md.Ct.Spec.App. Aug. 29, 2008). The opinion of the Court of Special Appeals included the following analysis:

In the present case, Mr. Rogers did not seek a writ of mandamus, either [in] his petition for judicial review or in his appeal. He now alleges that he was aggrieved by the Port Wardens' failure to abide by its own procedures with respect to notice. Though this allegation of an agency's failure to abide by its own non-discretionary duties invites comparisons to *Gisriel [v. Ocean City Bd. of Supervisors of Elections,* 345 Md. 477, 693 A.2d 757 (1997)] and *Murrell [v. Mayor & City Council of Baltimore,* 376 Md. 170, 829 A.2d 548 (2003) ], this case can be distinguished.

In *Gisriel,* the appellant challenged the agency's exercise of its ministerial duties every step of the way-to the board directly, before the city council, and in circuit court. In *Murrell,* the appellant responded to the notices that the City did provide, asked for an administrative appeal, and attended the hearing with the Department of Housing. Mr. Rogers, on the other hand, failed to attend the hearing before the Port Wardens; nor did he communicate his concerns to the Port Wardens in writing. In the circuit court, he had only sought a judicial review of the *manner* in which the Port Wardens performed their duty, involving the substantiality of the evidence supporting factual findings, the reasonableness of its inferences and conclusions. *Cf. Gisriel,* 345 Md. at 498[, 693 A.2d at 767]. He did not argue that the Port Wardens had a nondiscretionary duty to publish notice of a hearing in two separate calendar weeks—the essence of his notice argument—until he briefed the question of standing in his appeal to this court.

In *Murrell,* the appellant argued on appeal that his action in the circuit court had been in the manner of a mandamus action. Here, Mr. Rogers makes no such argument. When no applicable state or local law expressly confers jurisdiction on the Court of Special Appeals, and when an appellant waits until an appeal to allege that an agency failed to perform its nondiscretionary duties, then the Court of Spe-

cial Appeals has neither statutory nor common law jurisdiction over the case.

*Id.,* slip op. at 22–23 (footnote omitted, emphasis in opinion).

## II. Discussion

### Jurisdiction of the Court of Special Appeals

"It is an often stated principle of Maryland law that appellate jurisdiction, except as constitutionally authorized, is determined entirely by statute, and that, therefore, a right of appeal must be legislatively granted." *Gisriel v. Ocean City Bd. of Supervisors of Elections,* 345 Md. 477, 485, 693 A.2d 757, 761 (1997), *cert. denied,* 522 U.S. 1053, 118 S.Ct. 702, 139 L.Ed.2d 645 (1998). Maryland Code (1974, 1998 Repl. Vol.), § 12–301 of the Courts and Judicial Proceedings Article states that except as provided in § 12–302, "a party may appeal from a final judgment entered in a civil or criminal case by a circuit court." Section 12–302(a), in pertinent part, provides:

> Unless a right to appeal is expressly granted by law, § 12–301 does not permit an appeal from a final judgement of a court entered or made in ... reviewing the decision of ... an administrative agency[.]

In *Gisriel,* this Court stated:

> [W]hen a circuit court proceeding in substance constitutes ordinary judicial review of an adjudicatory decision by an administrative agency or local legislative body, pursuant to a statute, ordinance, or charter provision, and the circuit court renders a final judgment within its jurisdiction, § 12–302(a) is applicable, and an appeal to the Court of Special Appeals is not authorized by § 12–301.

345 Md. at 496, 693 A.2d at 766–67 (citation omitted). *See also Prince George's County v. Beretta U.S.A. Corp.,* 358 Md. 166, 174, 747 A.2d 647, 651 (2000).

Section 10–222 of the State Government Article provides for judicial review of the final decision in a contested case decided by an administrative agency. A "contested case" is one in which, *inter alia,* the proceeding is before an "agency."

State Government Article § 10–202(d). An "agency" is defined as:

> (1) an officer or unit[1] of the State government authorized by law to adjudicate contested cases; or
>
> (2) a unit that:
>
> (i) is created by general law;
>
> (ii) operates in at least 2 counties; and
>
> (iii) is authorized by law to adjudicate contested cases.

State Government Article § 10–202(b). § 10–223(b) of the State Government Article, in pertinent part, provides:

> (b) *Right of Appeal.*—(1) A party who is aggrieved by a final judgment of a circuit court under this subtitle may appeal to the Court of Special Appeals in the manner that law provides for appeal of civil cases.
>
> (2) An agency that was a party in the circuit court may appeal under paragraph (1) of this subsection.

The Board of Port Wardens of Annapolis is not a unit of State government and does not operate in two counties. As a result, any right of appeal to the Court of Special Appeals must be found elsewhere in the Maryland Code, in the Anne Arundel County Code, or in the Annapolis City Code. No such right can be found in any of those codes.

As noted by the Circuit Court and the Court of Special Appeals, § 15.16.050(F) of the Annapolis City Code provides that "[a] person aggrieved by a decision of the port wardens may appeal that decision to the Circuit Court for Anne Arundel County." There is, however, no provision in state or local law that authorizes further review by the Court of Special Appeals. In *Beretta Corp., supra,* this Court stated:

> [A]s long as a circuit court is acting within its special statutory jurisdiction, the limitation upon the right to appeal is applicable regardless of the issues being raised. Except for a question of jurisdiction, the doctrine is a limitation

---

1. A "unit" is "an officer or unit authorized by law to adopt regulations." State Government Article § 10–101(i).

> upon the right to appeal and not upon the issues cognizable on appeal. Appeals have been precluded in cases involving legal issues, constitutional issues, issues concerning procedural irregularity, and issues about the lawful composition of an administrative agency.

358 Md. at 180, 747 A.2d at 654. The "jurisdiction" exception ordinarily applies to the jurisdiction of the Circuit Court, not to the jurisdiction of the administrative agency. As this Court stated in *Johnson v. Board of Zoning Appeals of Baltimore County,* 196 Md. 400, 76 A.2d 736 (1950):

> [I]t is not our province to consider the evidence and decide whether or not the [Circuit] Court made a proper decision in the light of the factors prescribed by the zoning regulations for the guidance of the Board of Zoning Appeals in granting a special permit. The question here is: Were the things complained of and decided by the Court below things which the Court had jurisdiction to decide? If the Court had the power to decide what it did decide, then its decision, whether right or wrong in point of law or fact, cannot be reviewed, because the power to review such a judgment has not been conferred by the Legislature upon the Court of Appeals.

*Id.* at 412, 76 A.2d at 741.

In the case at bar, there is no claim that the Circuit Court acted outside its jurisdiction, or that Petitioner actually sought "mandamus" relief from the Circuit Court. Petitioner's PETITION FOR JUDICIAL REVIEW expressly requested "judicial review of the actions of the Port Wardens[.]" As the Circuit Court proceeding was a statutory judicial review action, we affirm the judgment of the Court of Special Appeals dismissing Petitioner's appeal "for lack of [appellate] jurisdiction."

### Jurisdiction of the Board of Port Wardens

Petitioner argues that (in the words of his brief) "[t]he Port Wardens' decision approving the Application is void because the failure to give proper notice was fatal to the Port

Warden's jurisdiction over the issue." In support of this argument, Petitioner has identified three violations of the Annapolis, Md., Municipal Code: (1) a violation of § 15.16.040(A), which requires that the Port Wardens "cause notice of the hearing on the [building permit] application to be published once in each week for two consecutive weeks," and (2) two violations of § 15.20.050, which required EYC to both (a) send a notice by certified mail to neighboring property owners "[u]pon submission of a building permit application," and (b) "submit all return receipts from the certified mailings to the Board of Port Wardens at the hearing."

According to Petitioner, his "void for lack of jurisdiction" argument is properly before this Court, and is controlled by *Cassidy v. Baltimore County Board of Appeals, et al.*, 218 Md. 418, 146 A.2d 896 (1958), in which we noted "that the failure of an administrative official or board to give a proper notice of a hearing, required by law, is fatal to the jurisdiction of the official or the board to conduct the hearing[.]" *Id.* at 421–22, 146 A.2d at 898. While we agree with the Court of Special Appeals that only the Circuit Court had jurisdiction to conduct a judicial review of this argument,[2] even if there were appellate jurisdiction, we would hold that there is no merit in the argument that the Port Wardens' decision is void *ab initio*.

In *Cassidy*, citizens protesting the grant of a special exception to the Baltimore Gas and Electric Company applied to the Circuit Court for Baltimore County for a writ of *certiorari*, and argued "that neither the [Zoning] Commissioner nor the Board of Zoning Appeals had authority ... to grant a special exception when ... the notice to the public did not specifically mention a request for a special exception, but stated only that a reclassification was sought." *Id.* at 421, 146 A.2d at 897. The Circuit Court rejected that argument, and the protestants

---

2. Unlike the petitioner in *Murrell v. Mayor and City Council of Baltimore*, 376 Md. 170, 829 A.2d 548 (2003), in the case at bar, Petitioner has *never* argued that "the substance of the circuit court action was a common law mandamus action[, and therefore] was appealable to the Court of Special Appeals under § 12–301 of the Courts and Judicial Proceedings Article." *Id.* at 196–97, 829 A.2d at 564.

noted an appeal to this Court, which applied a "substantial compliance" test to the notice at issue, and concluded that "the notice in this case was, at least, a substantial compliance with the requirements of all of the zoning regulations and those enumerated by Professor Merrill [in 2 *Merrill, Notice,* Sec. 796]." *Id.* at 425, 146 A.2d at 900.

*Cassidy* was cited in *Clark v. Wolman,* 243 Md. 597, 221 A.2d 687 (1966), in which this Court considered the question of whether "the failure of an official to comply, literally, with the ordinance provisions relative to a [reclassification of property] invalidate the City [of Annapolis' reclassification] action[.]" *Id.* at 598–99, 221 A.2d at 687. In *Clark,* after the City of Annapolis adopted a resolution granting appellees' request for a zoning reclassification, nearby property owners "filed a bill of complaint in the Circuit court seeking to have said resolution set aside." *Id.* at 598, 221 A.2d at 688. The Circuit Court rejected appellants' argument that noncompliance with the notice requirement rendered the reclassification resolution "unconstitutional, illegal and void." While affirming the judgment of the Circuit Court, this Court stated:

> Appellants' brief states "Section 26–59(c) of the Code * * * of Annapolis provides that notice shall be sent to the property owners within 175 feet" of the subject property.
>
> * * *
>
> Appellants' argument here is rather technical and specious in nature. They claim that appellants Thomas D. Clark and Betty F. Clark, his wife, should have received written notice of the hearing by the City, and the failure to give them such written notice invalidated the City's action. However, they not only received constructive notice (by newspaper publication), but they also obtained actual and written notice from a property owners association. In addition, Mr. Clark saw the posted sign on the property sought to be classified, which also notified of the date of the hearing. As a matter of fact, Mr. Clark attended the hearing, where, according to his own admission, he was accorded the right to be heard, but made no protest. Mrs. Clark, although she had actual

> knowledge of the hearing stayed at home to look after the children.
>
> The law, in its majesty, is not designed to require futile action or idle gestures. It is well settled that notification *purposed to inform* may be replaced by actual knowledge. 1 *Merrill, Notice,* 480. And this is especially so when the knowledge has been acted upon without reliance upon the notification's absence or its defects. *Ibid.; Cassidy v. Board of Appeals,* 218 Md. 418, 146 A.2d 896 2 *Merrill, Notice,* 384, 444.
>
> In the instant case, the required notice to property owners within 175 feet was for the purpose of informing them of the hearing on the requested change. They had actual knowledge thereof and acted upon that knowledge. We hold that under the circumstances, Mr. and Mrs. Clark lost nothing from the failure to receive written notice of the hearing, and this failure did not invalidate the City's action.

*Id.* at 599–600, 221 A.2d at 688.

As the Circuit Court noted in its MEMORANDUM OPINION, "EYC sent Petitioner notice of the administrative hearing by certified mail [but] Petitioner chose neither to attend the hearing nor to submit any written opposition to the Port Wardens." For the reasons stated in *Clark, supra,* because the record shows that he had actual knowledge that EYC's application would be considered by the Port Wardens at the June 27, 2006 hearing, Petitioner "lost nothing" from the "rather technical" failures of notice about which he complains. Under these circumstances, there is no merit in the argument that the administrative decision at issue is void *ab initio.*

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; PETITIONER TO PAY THE COSTS.**